BC

STATUS PRESENTMENT & WRITTEN-ONLY APPEARANCE – jerelle-thomas: smith™ © – Executor–Beneficiary–Creditor–Subrogee in equity – Case No. 1:25-cv-12711 (N.D. Ill., clerk indexing only)

FILED
12/9/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

PJJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**jerelle-thomas: smith™ ©**, Executor–Beneficiary–Creditor–Subrogee in equity
(Perfected Interest: GA UCC-1 044-2025-004921)

    v.

Baxter Credit Union, Respondent-Obligor
(IN VOLUNTARY BANKRUPTCY OF TRUST DUTIES)

MINISTERIAL TRACKING: 1:25-cv-12711
(For identification only – no jurisdictional adhesion)

Assigned to: Hon. Martha M. Pacold
EQUITY VENUE: Article III Chancery Capacity
DATE: December 9, 2025

---

JURISDICTIONAL CLARITY: This presentment operates in parallel to any statutory proceeding. It constitutes a private trust accounting demand and commercial notice of default that exists independently of any court's procedural rules. The ministerial docket serves only as a public notice registry for third parties.

COMMERCIAL NOTICE: This instrument operates as, and gives notice of, the living man's position regarding:
• Notice of Dishonor (UCC 3-502)
• Notice of Breach of Trust (Restatement of Trusts § 201)
• Commercial Setoff Concepts (including principles reflected in UCC Article 9)
• Equitable Lien Perfection

---

## Testimony under YHWH by the living man in private capacity

I, **jerelle-thomas: smith™ ©**, a living aboriginal American man on the land commonly called Georgia, appear only in private capacity as Executor–Beneficiary–Creditor–Subrogee in equity for the private trust estate associated with the public transmitting utility sometimes styled for clerk purposes as "**Jerelle Thomas Smith**." Any variation in spelling, capitalization, or formatting of that public style is for indexing only and does not alter my private standing, rights, or claims.

This instrument is not a motion, petition, or request. It is a Status Presentment and Notice of Required Relief in Equity, issued as sworn testimony and directive to those holding and

---

administering the record, with explicit notice of supreme law constraints that, in Affiant's understanding, make dismissal for non-participation in telephonic proceedings improper.

## I. REFERENCE TO DECEMBER 5, 2025 DOCKET ENTRY

On or about December 5, 2025, the docket reflects a minute entry and "Notification of Docket Entry" identifying a telephonic "status" setting for December 17, 2025 at 9:30 a.m., with a dial-in telephone number and access code.

This Status Presentment acknowledges that the entry exists on the public docket and sets out, for the record:

(a) the current status of the controversy and equity record, and
(b) the living man's standing in writing only, with specific objection to any telephonic or oral procedure, backed by supreme law constraints that, in Affiant's understanding, bar dismissal for choosing written proceedings where a full written record exists.

The $405 constitutes a SPECIFIC BAILMENT (UCC 7-204) held in constructive trust. As bailee, the Clerk owes duties of reasonable care. Using these funds for any purpose other than securing the equity record constitutes conversion, in Affiant's understanding. The bailment is tendered with the intent that: (1) funds secure the equity record, (2) failure to provide equity requires return of the bailment, and (3) any misapplication may give rise to claims for additional damages under applicable commercial and equity principles.

## II. STATUS OF SERVICE, CONTROVERSY, AND EQUITY RECORD

The living man has already placed on record multiple sworn equity instruments, including but not limited to:

• The Emergency Equity Presentment and Bill in Equity served in or about October–November 2025;
• Equity Presentment: Perfected Subrogation & Triggered Trust; and
• Final Presentment – Equity in Honor [Private Equity & Commercial Trust Presentment], together with the Notice to Clerk: Lodging of Equity Presentment and Routing to Chambers.

These instruments, taken together, establish on the record that:

• Baxter Credit Union has received full written notice of the controversy, the traced res, and the required specific performance in equity;
• Baxter Credit Union has not answered by sworn counter-testimony, point-by-point, within the cure windows stated;
• The living man's subrogation into creditor position is perfected, and Baxter Credit Union stands

as a constructive trustee over all value traceable to the living man's labor, credit, and signatures;
• As documented by perfected security interest (GA UCC-1 044-2025-004921), all estate assets associated with the named transmitting utility are held in constructive trust for the benefit of the private estate and the living man.

The traced res currently identified on the record includes, but is not limited to:

• At least $4,697.48 in unauthorized or unjustified offsets and conversions tied to the relevant accounts and instruments; and
• A $405 bailment placed with the Clerk as evidence that the living man has already given consideration to support this equity record.

Baxter Credit Union has not produced:

• Full ledger-level accounting;
• The original instruments with complete chain of endorsements and any allonge;
• Proof of equal consideration, full disclosure, and meeting of the minds.

The Court now holds, in its custody, a complete written equity record consisting of sworn testimony, exhibits, and specific performance terms. That record is unrebutted by any sworn counter-affidavit from Baxter Credit Union.

For the avoidance of doubt, this Status Presentment does not change or weaken any prior affidavit, presentment, or notice. All prior sworn filings are reaffirmed in full.

## III. SUPREME LAW CONSTRAINTS ON DISMISSAL FOR NON-PARTICIPATION IN TELEPHONIC PROCEEDINGS

The following authorities are cited as constraints on the Court and Respondent, not as the source of the living man's inherent rights, which stand on higher law. They are the Court's own constitutional, statutory, and precedential limits on how it may regulate procedure and access.

**A. CONSTITUTIONAL FRAMEWORK – DUE PROCESS & PETITION**

1. **Due Process – Flexible but Meaningful (Mathews v. Eldridge)**

In Mathews v. Eldridge, 424 U.S. 319, 335 (1976), the Supreme Court explained that due process is not rigid but flexible, and that:

"Identification of the specific dictates of due process generally requires consideration of three distinct factors":

• the private interest affected,
• the risk of erroneous deprivation through the procedure used (and the probable value of

**Testimony under YHWH – Private equity record. All rights and remedies reserved, without prejudice, under UCC 1-103 and expressly reserved under UCC 1-308. No joinder. No suretyship for any public fiction. NOTICE: Failure to object to any statement herein within 5 days constitutes agreement and consent under the doctrine of acquiescence. - Page 3 of 13**

additional or substitute safeguards), and

• the Government's interest, including fiscal and administrative burdens.

Affiant applies this three-factor test as follows:

• **Private Interest** – The living man's interest in meaningful access to an Article III tribunal to obtain equitable relief for documented financial conversion, trust breach, and constructive trust res (including at least $4,697.48 in offsets and a $405 bailment) is substantial.

• **Risk of Erroneous Deprivation** – Telephonic proceedings carry heightened risk of miscommunication, misquotation, and misunderstandings about who said what and in what tone. By contrast, written proceedings reduce that risk by creating a permanent, reviewable record. Where the equity record is already fully written and unrebutted, written-only procedure reduces, not increases, the risk of error.

• **Government Interest** – The Court's interest in docket management and efficiency is equally, if not better, served by written submissions, particularly in an equity matter driven by affidavits, exhibits, and accounting. Written status handling imposes no greater administrative burden than telephonic proceedings.

Under Mathews, Affiant asserts that, in these specific circumstances, due process is more than satisfied by written proceedings. Requiring telephonic participation, and threatening dismissal for declining that mode, would be an unreasonable procedural burden when weighed against the three factors.

*Covey v. Town of Somers*, 351 U.S. 141 (1956): Due process requires procedures reasonably calculated to provide actual notice to interested parties. The living man's written presentments provide more than actual notice – they provide sworn testimony. Forcing telephonic participation where comprehensive written notice exists is, in Affiant's understanding, inconsistent with this principle.

2. **First Amendment – Right to Petition and Reasonable Access**

In NAACP v. Button, 371 U.S. 415, 429 (1963), the Court affirmed that the First Amendment protects "the right of the people… to petition for redress of grievances," including through litigation. In Bill Johnson's Restaurants v. NLRB, 461 U.S. 731, 741 (1983), the Court emphasized that the petition right "would be undermined if access to the courts could be denied." In BE&K Construction Co. v. NLRB, 536 U.S. 516, 531 (2002), the Court clarified that "the right to petition extends to all departments of the Government," which includes federal courts.

Affiant asserts that where:

- a complete, sworn written record has been lodged;
- the living man has appeared and testified in writing; and
- an explicit, workable written alternative to telephonic status has been provided,

reasonable access to the Court is fully satisfied through written proceedings. Conditioning continued access or matter survival on telephonic participation alone—despite the presence of a perfected written record—would, in Affiant's understanding, be inconsistent with these petition precedents by effectively burdening access for choosing written-only participation.

3. **Alternative Channels and Reasonable Regulation**

Affiant acknowledges that courts may impose reasonable procedural regulations on the manner of presentation. In Thomas v. Collins, 323 U.S. 516, 540 (1945), the Court warned that regulation must be narrowly drawn and not unnecessarily burden protected rights. In Minnesota State Board for Community Colleges v. Knight, 465 U.S. 271, 283 (1984), the Court discussed government latitude where alternative channels remain available.

Here:

- **Alternative channel exists and is in use** – Written filings and presentments are already the primary vehicle in this equity matter. Affiant has not refused process; Affiant has chosen a different channel (written, sworn presentments), consistent with equity's historical practice.

- **No showing that telephonic is necessary** – No fact has been identified that cannot be addressed in writing. No emergency oral testimony is needed to resolve the equities where Respondent has not even appeared.

- **Traditional equity is document-driven** – As recognized in historical discussions of equity practice (e.g., Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 284 (1988)), equity has long operated through written bills, answers, and decrees rather than oral, ad hoc status calls.

Under these conditions, Affiant asserts that insisting on telephonic status—when a complete written record exists and no prejudice from written procedure has been shown—is not a "reasonable regulation" but an unnecessary burden on the petition and due-process rights.

4. **Article III Equity Jurisdiction Once Invoked**

Article III extends judicial power to "Cases, in Law and Equity." Once equity jurisdiction has been properly invoked by a real controversy with traced res and sworn evidence, the Court is constrained to exercise that jurisdiction within constitutional bounds. Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 318–19 (1999), addresses the historic scope of equity powers.

**Testimony under YHWH – Private equity record. All rights and remedies reserved, without prejudice, under UCC 1-103 and expressly reserved under UCC 1-308. No joinder. No suretyship for any public fiction. NOTICE: Failure to object to any statement herein within 5 days constitutes agreement and consent under the doctrine of acquiescence. – Page 5 of 13**

Affiant does not claim to control the Court's decisions, but testifies that refusing to consider the merits of a complete written equity record solely because the living man declines a telephonic status conference is inconsistent with the Court's Article III obligation to adjudicate real matters properly before it.

## B. JUDICIAL DISCRETION, DOCKET CONTROL, AND ITS LIMITS

Opposing counsel or the Court might argue:

• That courts have inherent authority to manage their dockets, including how and when to schedule hearings. See Link v. Wabash R. Co., 370 U.S. 626, 630–31 (1962).

Affiant responds:

• **Discretion is not absolute** – Even in Link, the Court acknowledged that discretion is bounded by due process and fairness. Discretion to manage a docket does not include discretion to shut down access where a party has already appeared and fully tendered a written record.

• **Written status is a workable alternative** – Here, Affiant is not disobeying the Court or abandoning the matter; Affiant is offering a specific, less risky alternative: full written status and continued written submissions. That is not disobedience; it is a different, reasonable mode.

• **FRCP 1 and 28 U.S.C. § 452 mirror this limit** – FRCP 1 directs courts to secure "the just, speedy, and inexpensive determination of every action." 28 U.S.C. § 452 provides that courts are "deemed always open" for filing proper papers. Affiant's sworn writings are "proper papers." Dismissing purely for refusal to join a phone call, when written status is available, undermines both provisions.

Additionally, Federal Rule of Civil Procedure 5(d)(1) provides that "any paper after the complaint that is required to be served must be filed within a reasonable time after service." This Status Presentment is tendered in that spirit: as a paper duly served and then timely filed for ministerial record purposes, consistent with the Court's own rule, while preserving Affiant's private standing and equity posture.

## C. EQUITY MAXIMS AND HISTORICAL PRACTICE

Affiant relies on equity maxims and history, which align with but do not depend upon modern statutes or rules:

• **"Equity will not suffer a wrong to be without a remedy."**
Dismissing under these circumstances leaves unrebutted wrongs (unauthorized offsets, failure to account, constructive trust res) without an equitable remedy.

• **"Equity regards as done that which ought to be done."**

The duty of a constructive trustee or bailee to account and restore res, once established on the record, does not vanish based on telephonic preferences.

• **"Equity looks to intent rather than form."**

The intent here is honest resolution of an equity dispute on a complete written record. The form—telephonic or written—should serve that intent, not obstruct it.

• **Document-based procedure** – Traditional equity operated through written bills, sworn answers, and written decrees, not informal telephone conferences. Written-only handling, especially where Respondent has not shown up, is consistent with equity's nature.

## D. BALANCING TEST CONCLUSION (SPECIFIC TO THIS CASE)

Affiant does not assert that telephonic hearings are always improper or unconstitutional. The position is narrower:

• In this specific equity matter,
• where the living man has already appeared and testified in writing,
• where a full, sworn, documentary record is on file,
• where the Respondent has not appeared or answered, and
• where the living man offers a concrete, efficient written alternative,

insisting on telephonic participation and threatening dismissal for choosing written-only process is, in Affiant's understanding:

• inconsistent with the due-process balancing in Mathews v. Eldridge;
• unduly burdensome on the First Amendment petition right as discussed in Button, Bill Johnson's, and BE&K; and
• out of step with the Court's own equity tradition and obligations under Article III.

The living man, therefore, gives notice that dismissal or penalty based solely on refusal to attend a telephonic status conference, in the presence of this perfected written record and written-status alternative, would be inequitable and contrary to the Court's own controlling authorities.

## E. UCC 1-103, 1-305, AND 1-304 – COMMERCIAL LAW'S OWN RECOGNITION OF EQUITY, REMEDY, AND GOOD FAITH

Without conceding jurisdiction under any commercial code, Affiant notes that UCC § 1-103 (as enacted in the several States) provides that, unless displaced by particular provisions of the Code, the "principles of law and equity" supplement its provisions. In Affiant's understanding, this includes the maxims of equity, the law of trusts, subrogation, suretyship, and common-law doctrines of fraud, mistake, and unjust enrichment.

Further, UCC § 1-305 provides that remedies are to be "liberally administered" so that the aggrieved party is placed in as good a position as if the other party had fully performed, and that neither consequential nor penal damages are to be imposed except as specifically provided. Affiant asserts that, even under this commercial framework, it is inconsistent with § 1-305 to deny substantive remedy for documented conversion and constructive trust res based solely on refusal to attend a telephonic status conference, where a complete sworn written record is already on file.

In addition, UCC § 1-304 imposes an obligation of good faith in the performance and enforcement of any contract or duty within the scope of the Code. Affiant understands that this obligation of good faith is inconsistent with (a) Respondent's refusal to account, restore, or even appear, and (b) any use of procedural telephonic preferences to sidestep the equity and commercial issues fully presented in writing.

Nothing in this matter has been shown to "displace" the operation of equity, the obligation of good faith, or the liberal administration of remedies. Accordingly, even if the dispute is viewed through a UCC lens, principles of law and equity, liberal remedies, and good faith enforcement all support consideration of the written record on its merits, rather than dismissal based on a telephonic format preference.

### F. FUNDAMENTAL RIGHT OF ACCESS – *Bounds v. Smith*, 430 U.S. 817 (1977)

The Court held prisons must provide adequate law libraries or assistance because "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers." This principle extends by analogy: where a party has prepared comprehensive legal papers, denying access because they will not participate orally undermines the very right Bounds protects. The living man has prepared more than "meaningful legal papers" – he has prepared a complete equity record.

## IV. WRITTEN-ONLY APPEARANCE AND OBJECTION TO TELEPHONIC STATUS ENTRY

The living man appears only in writing, under YHWH, and does not consent to any telephonic, oral, or unwritten conferencing in this matter.

In light of the constitutional, statutory, and equity constraints set out in Section III above, the living man maintains that written-only proceedings are the most appropriate and least risky mode of participation in this specific equity context, where:

**Testimony under YHWH – Private equity record. All rights and remedies reserved, without prejudice, under UCC 1-103 and expressly reserved under UCC 1-308. No joinder. No suretyship for any public fiction. NOTICE: Failure to object to any statement herein within 5 days constitutes agreement and consent under the doctrine of acquiescence. - Page 8 of 13**

• a complete sworn written record already exists,
• the Respondent has not appeared or answered, and
• a concrete written-status alternative has been offered.

Oral or telephonic procedures carry inherent risks that are incompatible with the equity record already established, including:

• The risk of unrecorded or ambiguous oral contracting;
• The risk of misquotation or mischaracterization of statements made by the living man;
• The risk of later disputes about "who said what," when the living man has already provided sworn testimony in writing.

The entire controversy—facts, parties, tracing of res, and required remedies—has been expressed and perfected in writing. Given the balancing factors identified in Section III, there is no need to introduce oral conversation where a full written record already exists on both the public and private sides.

In honor, without hostility, and while preserving peace, the living man therefore gives notice of objection to the telephonic status entry reflected on or about December 5, 2025, and does not consent to participation in that or any other oral or telephonic procedure in this matter, while remaining fully available in writing.

## V. REQUIRED SPECIFIC PERFORMANCE IN EQUITY

Equity does not move on vague preferences. It moves on specific performance due. In light of the constitutional, statutory, and equity constraints outlined in Section III and the written-only posture set out in Section IV, the following actions are required of those administering the docket and record:

1. **Telephonic Status Setting Adjusted**

That the telephonic "status" setting presently noted for December 17, 2025 at 9:30 a.m. be vacated, cancelled, or converted to a procedure conducted entirely by written submissions and written orders, consistent with:

• the due-process balancing principles in Mathews v. Eldridge;
• the petition and access protections in Button, Bill Johnson's, and BE&K; and
• equity's document-based, written-presentment tradition.

2. **Written Status Accepted as Sufficient**

That, in place of any oral conference, the living man's Written Status Presentment (this instrument) be accepted as the method of updating the record regarding service, controversy, and relief sought.

3. **No Dismissal or Penalty Based Solely on Telephonic Non-Participation**

That no dismissal, penalty, adverse inference, or punitive measure be predicated solely upon the living man's refusal to join a telephonic or oral conference, where:

• a complete sworn written record already exists,
• a workable written alternative has been tendered, and
• written-only participation, under the balancing test of Mathews, provides a more accurate and less risky mode of adjudication.

4. **Acknowledgment of Supreme Law Constraints**

That the Court acknowledge, on the record, that the constitutional, statutory, and equity constraints outlined in Section III have been duly noticed and are not denied, and that the matter will be addressed on the merits of the written equity presentments already on file rather than on the basis of telephonic format.

These items of performance are the exclusive cure for the attempted telephonic setting in this matter, under these specific facts. Any lesser or different action leaves the equity and constitutional concerns unresolved. This exclusive cure is consistent with the supplementary role of equity and the liberal administration of remedies under UCC §§ 1-103 and 1-305, which have not been shown to be displaced in this matter.

Nothing herein limits or replaces the substantive specific performance already required of Baxter Credit Union as set out in prior sworn presentments, including:

• Full forensic accounting and disclosure of all ledgers and flows;
• Restoration of all converted funds traced to the living man;
• Production of the original instrument(s), allonge(s), and chain of endorsements;
• Cessation of all future offsets;
• Correction of any adverse reporting related to the accounts and instruments at issue.

5. **EQUITY CONSEQUENCES OF PROCEEDING TELEPHONICALLY WITHOUT RESOLVING CONSTITUTIONAL CONCERNS**

Equity regards as done that which ought to be done. The constitutional constraints identified in Section III, combined with BCU's default and the Court's commercial conduct as bailee of the $405, create serious equity concerns if a telephonic proceeding moves forward without first addressing these issues.

Affiant therefore gives notice that, in Affiant's understanding, proceeding telephonically without first resolving the constitutional and equity questions raised herein would be inconsistent with due process, with the Court's fiduciary obligations as bailee of the $405 bailment, and with the maxim that "equity will not require a useless act." Any such attempt would be treated, in Affiant's private administrative framework, as evidence of bad faith and breach of bailment duties, without altering the living man's rights or remedies.

## VI. DEFAULT AND FINALITY AS TO THIS STATUS PRESENTMENT

This Status Presentment is sworn testimony and notice on the record. The living man requires that any party who disputes any numbered statement herein do so by sworn counter-affidavit, made on personal knowledge, addressing each paragraph point-by-point.

Failure to answer this Status Presentment by sworn counter-affidavit within five (5) days of its entry on the docket is dishonor in equity and will be treated as:

1. **Admission of Facts**

Admission of all material factual statements contained in this Status Presentment, including but not limited to:

• the existence and completeness of the written equity record;
• the tracing of res and the nature of the constructive trust;
• the written-only participation of the living man; and
• Baxter Credit Union's failure to rebut prior sworn presentments.

2. **Agreement as to Written-Only Sufficiency**

Agreement that the living man's written-only appearance is sufficient and that no adverse action may be based solely on refusal to join a telephonic or oral "status" proceeding.

3. **Agreement as to Supreme Law Constraints**

Agreement that the constitutional, statutory, and equity constraints described in Section III have been duly noticed, are not denied, and apply as limits on how the Court may treat written-only participation in this specific context.

4. **Final Default as to Telephonic Requirement**

Final default as to any claim that an oral or telephonic conference is required as a condition of maintaining or adjudicating this equity record.

This default clause does not replace or weaken any prior default, dishonor, or agreed facts arising from earlier notices and presentments. It is an additional, reinforcing default clause specific to

this Enhanced Status Presentment with Supreme Law Barriers to Dismissal.

## VII. WRITTEN CONTACT INFORMATION (NO JOINDER CREATED)

For the limited purpose of receiving written communications and written orders regarding this matter, the living man may be reached at:

Email: Jts93713@gmail.com & MagnatesAmexumEnterprisesBusinessTrust@proton.me

Mail: **jerelle-thomas: smith™ ©**
Executor–Beneficiary–Creditor–Subrogee in equity
c/o 3460 Kingsboro Road NE, Apt. 517
Atlanta, Georgia 30326

No agency, joinder, or suretyship is created or implied by the listing of this contact information. It is provided solely to facilitate written notice and written orders consistent with the living man's written-only appearance.

## VIII. OPERATIVE PRESUMPTIONS

Based on the unrebutted record, these presumptions now govern in Affiant's private administrative and equity framework:

A. **IRREBUTTABLE PRESUMPTIONS (IN AFFIANT'S PRIVATE EQUITY FRAMEWORK):**

1. BCU holds all extracted funds in constructive trust.
2. The $405 is held in bailment for securing equity.
3. The written record is complete and sufficient for equity review.

B. **REBUTTABLE ONLY BY SWORN COUNTER-AFFIDAVIT:**

1. That telephonic proceedings provide superior due process to written proceedings in this specific context.
2. That written proceedings prejudice any party in this specific context.
3. That dismissal for written-only participation would be consistent with the constitutional and equity principles cited herein.

C. **COMMERCIAL PRESUMPTIONS (PRIVATE ADMINISTRATIVE FRAMEWORK):**

1. Silence beyond ten (10) days after sworn notice is treated, in Affiant's private administrative framework, as acceptance by acquiescence, subject to any contrary sworn rebuttal on the record.

**Testimony under YHWH – Private equity record. All rights and remedies reserved, without prejudice, under UCC 1-103 and expressly reserved under UCC 1-308. No joinder. No suretyship for any public fiction. NOTICE: Failure to object to any statement herein within 5 days constitutes agreement and consent under the doctrine of acquiescence. - Page 12 of 13**

2. Retention of the $405 bailment without providing equity is treated, in Affiant's understanding, as unjust enrichment and breach of bailment duties.

3. Continued offsets after notice are treated, in Affiant's understanding, as willful conversion and ongoing breach of constructive trust duties.

## AFFIRMATION

I testify under YHWH that the statements above are true, correct, and complete to the best of my knowledge, understanding, and belief, made in private capacity on the land.

For administrative recognition only, and without waiving any private status, standing, or rights, this testimony is also given in a manner similar to 28 U.S.C. § 1746.

This instrument, when filed, is intended by Affiant to function as a commercial and equity record of the $405 bailment and all traced res for private accounting and enforcement purposes.

Executed on the land at Atlanta, Georgia (approx. 33.7490° N, 84.3880° W, WGS84), on December 9, 2025.

Affiant respectfully requests that the Clerk handle this instrument consistent with any applicable rules protecting sensitive financial or commercial information, without conceding that public disclosure would alter Affiant's rights or remedies.

All rights and remedies reserved, without prejudice, under the maxims of equity and as supplemented, not displaced, under UCC 1-103, and expressly reserved under UCC 1-308. No joinder. No suretyship for any public fiction.

All rights, titles, interests, and remedies are expressly reserved, without prejudice and without recourse, under the maxims of equity and as supplemented, not displaced, under UCC 1-103, 1-304, 1-305, and 1-308. No joinder. No suretyship. No agency for any public fiction, transmitting utility, or ALL CAPS entity.

Attachments: Exhibit A – Summary of Constitutional and Equity Issues

By: **jerelle-thomas: smith™ ©**
Born sovereign heir on the land commonly called America/Amexem,
living aboriginal American man in private capacity,
Executor–Beneficiary–Creditor–Subrogee in equity
for the private trust estate associated with **"Jerelle Thomas Smith"**

Autograph X: _jerelle-thomas: smith_ ARR UCC 1-308-1-103 *without prejudice*
Executor-Beneficiary-Creditor-Subrogee in Equity