FILED
09/28/2026
THOMAS G BRUTON
CLERK, U.S. DISTRICT COURT
BC

Case No: 1:25-CV-12711

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ILLINOIS

# EASTERN DIVISION

**JERELLE THOMAS SMITH,**

Plaintiff,

v.

**BAXTER CREDIT UNION,**

Defendant.

Case No. **1:25-cv-12711**

Hon. Martha M. Pacold

# FIRST AMENDED COMPLAINT FOR CONTRACTUAL, STATUTORY, CONSUMER-PROTECTION, DECLARATORY, ACCOUNTING, RESTORATIVE, AND EQUITABLE RELIEF

Plaintiff Jerelle Thomas Smith, proceeding pro se, states as follows against Defendant Baxter Credit Union ("BCU").

## I. NATURE OF THE ACTION

1. This First Amended Complaint is filed pursuant to the Court's July 30, 2026 ruling granting Plaintiff leave to amend.
2. The action concerns two vehicle-loan transactions identified as L01 and L02, Plaintiff's deposit accounts maintained by BCU, BCU's servicing of those loans, collateral-protection-insurance charges and credits, BCU's application of Plaintiff's deposit funds to the loans, and BCU's later treatment of **$829.38** as L01's regular payment.
3. BCU originally disclosed an L01 monthly installment of approximately $288.96.
4. BCU thereafter serviced L01 at approximately $288.88.
5. BCU continued using approximately $288.88 through November 2025.

6. On December 1, 2025, BCU's records first reflect an L01 account application of **$829.38**.
7. BCU thereafter repeatedly used $829.38 in servicing L01.
8. BCU's September 28, 2026 account interface identifies **$829.38 as the "Regular Payment."**
9. Plaintiff did not execute a written modification setting $829.38 as L01's regular payment.
10. Plaintiff did not receive a revised amortization schedule establishing $829.38.
11. Plaintiff did not receive a payment-change calculation showing the principal balance, insurance amounts, remaining term, maturity, or other inputs from which $829.38 was generated.
12. BCU's own later account interface also states that **$1,658.76** is currently due.
13. $1,658.76 equals exactly two payments of $829.38.
14. Using BCU's own historical payment figures and posted account activity, the unreconciled scheduled-installment difference through September 2026 is instead **$577.76**, the equivalent of two $288.88 installments.
15. The resulting **$1,081.00 difference** presents a concrete dispute over BCU's servicing and calculation of the amount due.
16. The records that resolve that dispute are maintained by BCU.
17. This action also concerns BCU's claimed authority to use Plaintiff's deposit funds to satisfy amounts BCU characterized as delinquent or past due.
18. Plaintiff seeks determination of the parties' actual contractual and account positions, correction of amounts shown to be erroneous, restoration of funds proven to have been taken beyond amounts lawfully due, and the statutory and equitable relief identified below.

## II. JURISDICTION AND VENUE

19. This Court has federal-question jurisdiction under 28 U.S.C. §1331 over Count IV to the extent the challenged transactions constitute electronic fund transfers governed by the Electronic Fund Transfer Act.
20. The Court has supplemental jurisdiction under 28 U.S.C. §1367 over related state-law claims.
21. Plaintiff is domiciled in Georgia.
22. BCU is an Illinois credit union headquartered in Vernon Hills, Illinois.
23. Diversity of citizenship is complete.
24. At commencement of this action, Plaintiff placed more than $75,000 in controversy, including a stated monetary demand exceeding that jurisdictional threshold together with declaratory and equitable relief concerning the loan obligations and collateral.
25. Plaintiff does not reduce the jurisdictional amount by narrowing unsupported theories in this amended complaint.
26. Venue is proper in this District because BCU is headquartered here and material servicing and account activity at issue was performed, administered, or controlled by BCU.
27. BCU is subject to personal jurisdiction in this District.

## III. PARTIES

28. Plaintiff is an individual consumer.
29. Plaintiff maintained deposit accounts with BCU.
30. Plaintiff entered into the L01 and L02 vehicle-loan transactions with BCU.
31. BCU originated or serviced the loans.
32. BCU maintained the deposit accounts from which the challenged account applications occurred.

33. BCU controls the servicing systems containing the payment-setting, aging, account-application, CPI, title, and transaction records material to the disputes pleaded below.

## IV. L01 — MERCEDES TRANSACTION

34. L01 concerns a 2013 Mercedes-Benz C250, VIN WDDGJ4HB0DF998751.
35. L01 is associated with account ending in **6387**, Loan 01.
36. The transaction was originated in October 2020.
37. The L01 disclosure identifies an APR of 3.74%.
38. It identifies an amount financed of $19,267.50.
39. It states seventy-four monthly payments of $288.96 beginning December 1, 2020.
40. It states a final payment of approximately $288.93.
41. The itemization identifies $18,169.50 as a payment on Plaintiff's behalf to Financial Center Credit Union.
42. It identifies $699 for prepaid maintenance.
43. It identifies $399 for GAP.
44. BCU thereafter serviced L01 at approximately $288.88.
45. BCU's April 30, 2025 remaining-payment schedule continued to identify approximately $288.88 as the payment.
46. BCU's own records therefore establish that approximately $288.88 remained the operative servicing payment shortly before the controversy arose.
47. Plaintiff does not presently allege that BCU failed to furnish the consideration represented by the L01 transaction.
48. Plaintiff does challenge BCU's later performance and enforcement of the agreement.

## V. L02 — CADILLAC TRANSACTION

49. L02 concerns a Cadillac CTS financed in May 2024.
50. The L02 disclosure identifies an APR of approximately 6.44%.
51. It identifies a recurring installment of approximately $322.92.
52. BCU continued using approximately $322.92 for L02 during the period in which the L01 payment changed materially.
53. L01 and L02 are separate transactions and must be accounted for separately.

## VI. CONTRACTUAL TERMS MATERIAL TO THE DISPUTE

54. Plaintiff authenticated the identified L01 and L02 loan documents.
55. Plaintiff does not dispute his contractual capacity concerning those authenticated documents.
56. Plaintiff's authenticated promise and undertakings formed part of the bargained-for exchange.
57. BCU's documents identify its counter-performance as financing the transactions and paying identified third parties.
58. Plaintiff does not plead absence of consideration merely because BCU has not produced every internal settlement record.
59. L01 required regularly scheduled payments according to the agreement and permitted contractual changes only as authorized by the governing documents.
60. The L01 Security Agreement required insurance acceptable to BCU.
61. Section 7 permitted BCU to purchase insurance under specified circumstances if required coverage was not maintained.

62. Section 7 also provided that BCU **may increase Plaintiff's payments to pay the amount added** for insurance within the applicable insurance or loan term.
63. Section 7 therefore ties any insurance-related payment increase to an **amount added** to the obligation.
64. Nothing in Section 7 expressly states that an installment that became due at an earlier payment amount may later be retroactively revalued at a higher payment amount adopted after that installment came due.
65. The L01 agreement also contains provisions concerning Plaintiff's deposit shares and BCU's rights upon default.
66. BCU separately invoked Section 22 of a Consumer Member Service Agreement ("CMSA") as authority to apply account funds toward **"past-due balances."**
67. Under either asserted source of authority, the amount actually due or delinquent remains a necessary factual predicate to the scope of BCU's enforcement.

## VII. DOCUMENT REQUESTS AND TERMINATION OF AUTOMATIC PAYMENTS

68. On April 29, 2025, Plaintiff sent BCU a written request concerning L01 and L02.
69. BCU began responding on April 30, 2025.
70. BCU produced loan documents.
71. BCU produced transaction histories.
72. BCU produced remaining-payment schedules.
73. BCU produced certain payment-instrument images and account information.
74. Plaintiff does not state that BCU produced nothing.
75. Plaintiff also requested internal calculation and accounting information.
76. BCU declined to provide certain requested internal records, characterizing them as proprietary or confidential.
77. On May 23, 2025, Plaintiff instructed BCU to terminate the existing automatic-payment arrangement.
78. BCU honored that instruction.
79. BCU waived a payment-method-change fee.
80. BCU supplied a coupon book.
81. No new voluntary recurring automatic-payment authorization for $829.38 was executed by Plaintiff.

## VIII. ACCOUNT ACTIVITY AFTER REVOCATION

82. BCU's histories thereafter reflect recurring applications from Plaintiff's deposit accounts to L01 and L02.
83. BCU's histories use more than one transaction description.
84. Some entries are identified as offsets.
85. Others are identified as transfers from Plaintiff's share accounts.
86. On August 1, 2025, the L01 amount reflected was $288.88.
87. On September 4, 2025, the L01 amount reflected was $577.76.
88. On November 3, 2025, the L01 amount reflected was $288.88.
89. On December 1, 2025, the L01 amount changed to **$829.38**.
90. BCU thereafter recorded $829.38 L01 account applications on January 2, January 29, February 18, April 1, April 22, May 20, July 1, July 29, and September 17, 2026.
91. Through September 17, 2026, those L01 account applications total **$9,449.32**.
92. Over the corresponding period, L02 account applications at $322.92 total **$4,520.88**.
93. The combined challenged account activity through September 17, 2026 totals **$13,970.20**.
94. Plaintiff does not allege that every dollar within that total must necessarily be returned.

95. Whether any amount must be restored depends upon the correct contractual balance, correct delinquency status, and classification of each transaction.

## IX. THE CHANGE FROM $288.88 TO $829.38

96. Plaintiff filed this action on October 17, 2025.
97. On November 3, 2025, BCU continued servicing L01 using $288.88.
98. On December 1, 2025, BCU's records first reflect $829.38.
99. The increase is $540.50 per installment.
100. Plaintiff did not execute a written modification establishing that amount.
101. Plaintiff did not receive a revised amortization schedule establishing it.
102. Plaintiff did not receive a notice containing the calculation producing it.
103. CPI charges had existed on L01 for years before the December 2025 payment change.
104. BCU nevertheless continued servicing the loan at approximately $288.88 until November 2025.
105. The timing and inputs of the payment-setting event are therefore material.
106. Plaintiff does not allege retaliation merely from the timing.
107. BCU's payment-change record and servicing audit trail identify when the payment field changed, what inputs were used, and whether the change resulted from an employee action or automated process.

## X. JULY 2026 INSURANCE CORRECTION

108. Plaintiff knew by May 2025 that BCU had raised CPI and insurance requirements.
109. Plaintiff did not know that BCU was attributing the later **$829.38** payment amount to insurance.
110. BCU had not supplied Plaintiff a calculation connecting $829.38 to CPI.
111. Plaintiff called BCU in July 2026 because $829.38 was repeatedly being taken and Plaintiff wanted to know why.
112. During that inquiry, Plaintiff learned that BCU was attributing the disputed account treatment to insurance.
113. On July 1, 2026, Plaintiff transmitted declaration-page proof of insurance to BCU's designated insurance processor.
114. Plaintiff transmitted additional declaration pages for both vehicles later that same day.
115. Plaintiff thereafter sent additional written insurance documentation and notice.
116. On July 8, 2026, BCU posted a **$511.00 CPI insurance refund**.
117. BCU also posted a **$34.71 CPI interest refund**.
118. The two credits total $545.71.
119. Plaintiff does not presently allege that $511 was necessarily an incorrect pro-rata refund amount.
120. BCU nevertheless continued servicing L01 using $829.38 after reducing CPI-related amounts on the account.
121. BCU did not send Plaintiff a revised payment calculation following those credits.
122. If §7 and CPI amounts generated the $829.38 figure, the amount actually remaining after those credits is material to whether $829.38 continued to satisfy the contractual payment-setting condition.
123. If CPI did not generate $829.38, BCU's payment-setting record identifies the separate basis that did.

# XI. THE $577.76 / $1,658.76 CONTROVERSY

124. BCU's account interface captured on September 28, 2026 shows a current L01 balance of approximately **$4,205.21**.
125. It identifies the interest rate as 3.74%.
126. It identifies **$829.38** as the regular payment.
127. It identifies **$1,658.76** as the current amount due.
128. It identifies nine payments remaining.
129. From June 1, 2025 through November 1, 2025, six scheduled installments at BCU's then-existing $288.88 payment total **$1,733.28**.
130. From December 1, 2025 through September 1, 2026, ten installments at BCU's later $829.38 amount total **$8,293.80**.
131. Using BCU's own payment figures, scheduled installments over those periods total **$10,027.08**.
132. BCU's reflected L01 applications through September 17, 2026 total **$9,449.32**.
133. The difference is **$577.76**.
134. $577.76 equals two installments of $288.88.
135. BCU's current amount due of $1,658.76 equals two installments of $829.38.
136. $1,658.76 exceeds $577.76 by **$1,081.00**.
137. BCU's own records therefore create a concrete question whether unpaid installments that originally arose while $288.88 was the operative payment were subsequently valued at the later $829.38 payment.
138. Plaintiff has not identified any provision in the authenticated L01 agreement expressly authorizing retroactive revaluation of an already-due installment in that manner.
139. BCU's installment-aging record can establish exactly how each due installment was carried, valued, satisfied, or repriced.
140. This is not a demand for discovery merely because Plaintiff does not understand his account.
141. It is a dispute created by two different amounts appearing in BCU's own servicing records.

# XII. CMSA DELIVERY AND ASSENT

142. BCU has relied upon CMSA §22 as authority for deposit-account applications.
143. Through its regulatory response, BCU represented that Plaintiff received and agreed to the CMSA at account opening.
144. Plaintiff states from personal knowledge that he did not receive the CMSA BCU now invokes.
145. BCU has not provided Plaintiff a contemporaneous account-opening document identifying the precise CMSA version allegedly delivered.
146. BCU has not provided Plaintiff an objective assent record showing acceptance of that version.
147. Plaintiff therefore disputes assent to the particular CMSA upon which BCU relies.
148. Plaintiff does not contend that this dispute nullifies provisions contained in the separately authenticated L01 and L02 documents.
149. Even under BCU's own quotation of §22, the provision concerns **past-due balances**, making the actual amount past due material.

## XIII. L01 TITLE STATUS

150. The L01 Security Agreement purported to appoint BCU and its agents as attorney-in-fact for specified title and lien-related acts.
151. The origination package also contained a separate Limited Power of Attorney for Lien Certification.
152. In May 2025, BCU stated that it **had the Indiana title**.
153. BCU nevertheless stated that Plaintiff needed to execute another Limited Power of Attorney.
154. In August 2025, BCU represented that it was waiting for that document so it could add its lien.
155. Indiana BMV title-history material obtained by Plaintiff does not identify BCU as lienholder.
156. Indiana BMV subsequently issued Plaintiff a paper title dated August 31, 2026.
157. Plaintiff presently possesses that title.
158. It identifies Plaintiff as titled owner.
159. It does not identify BCU as lienholder.
160. Plaintiff does not contend that lack of perfection necessarily eliminates any security interest enforceable between the original contracting parties.
161. Plaintiff seeks determination only of BCU's actual claimed perfection status and any related account consequences.

## XIV. SIGNED ACCOUNTING DEMAND

162. On October 17, 2025, Plaintiff filed a signed instrument titled **Bill in Equity — Emergency Presentment for Accounting, Restoration, Disgorgement, Release of Liens, and Immediate Injunctive Protection**.
163. That signed record identified L01 and L02.
**164.** It expressly demanded **"COMPLETE EQUITABLE ACCOUNTING — BOOKS OPENED (Both L01 and L02)."**
165. The request included the unpaid obligations and their components, including ledger, amortization, finance-charge, CPI, payment, and credit information.
166. Plaintiff's record reflects delivery of the signed materials to BCU's Vernon Hills office on November 11, 2025.
167. Plaintiff relies upon November 11 as the date of BCU's receipt for purposes of this count and does not equate that receipt with the later formal Rule 4 service reflected elsewhere on the docket.
168. Fourteen days after November 11 was November 25, 2025.
169. BCU did not send Plaintiff by that date a signed accounting stating the aggregate unpaid secured obligation for each identified loan and identifying its components in reasonable detail.
170. Plaintiff has not subsequently received such a signed accounting.

## XV. SERVICING REPRESENTATIONS AND RECORDS CONTROLLED BY BCU

171. BCU presently represents that L01's regular payment is $829.38.
172. BCU presently represents that $1,658.76 is due.
173. Plaintiff disputes both the calculation of the payment and the calculation of the amount due.
174. BCU possesses the loan-level servicing records that created those figures.

175. A payment-change or re-amortization record exists if BCU actually recalculated L01 to $829.38 through its servicing system.

176. An installment-aging record exists if BCU tracks when installments came due, their amounts, payments applied, paid-through status, and delinquency.

177. Those records do not merely provide background evidence.

178. They resolve whether BCU performed and enforced the agreement according to the payment and default provisions it invokes.

179. BCU's native transaction information likewise identifies the classification and processing method for the challenged post-revocation deposit-account activity.

180. Plaintiff seeks no predetermined conclusion from records he has not seen.

181. Plaintiff seeks determination of the true account position from the records BCU actually used to service and enforce the loans.

## XVI. ECONOMIC INJURY

182. BCU's disputed figures were used in administering actual accounts.

183. Deposit funds were repeatedly applied to L01 and L02.

184. Plaintiff lost use of those funds.

185. Plaintiff's banking activity was disrupted.

186. Plaintiff has sustained actual economic loss to the extent any funds were applied before due, beyond the amount then due, or pursuant to an incorrectly calculated payment or arrearage.

187. Plaintiff does not seek recovery of amounts ultimately established to have been lawfully due.

188. Plaintiff seeks restoration only to the extent reconciliation establishes overcollection, premature collection, erroneous charges, or other recoverable loss.

# COUNT I

# BREACH OF CONTRACT AND BREACH OF THE DUTY OF GOOD-FAITH PERFORMANCE AND ENFORCEMENT

189. Plaintiff incorporates paragraphs 1 through 188 only.

190. L01 is an enforceable written agreement.

191. Plaintiff performed under L01 for years.

192. Plaintiff does not conceal that scheduled installments became unpaid after termination of automatic payments.

193. BCU was entitled to exercise only the rights granted by the governing agreement.

194. Section 7 allowed BCU to increase payments to pay insurance amounts actually added to the loan.

195. Section 7 did not expressly state that an installment already due at an earlier scheduled amount became retroactively due at a later increased amount.

196. Using BCU's own servicing figures, scheduled installments through September 2026 exceed BCU's reflected account applications by $577.76.

197. BCU nevertheless states that $1,658.76 is due.

198. The difference between those figures is $1,081.00.

199. To the extent BCU treated the two-installment deficiency as two $829.38 installments rather than the equivalent of two $288.88 installments, Plaintiff states that BCU enforced an amount not authorized by the payment terms applicable when those installments originally came due.

200. BCU also reduced CPI-related amounts by $545.71 in July 2026 but continued using the same $829.38 payment.

201. To the extent $829.38 was calculated under §7 to recover CPI amounts over a stated remaining term, BCU's continued enforcement of the unchanged amount after reducing the amount added had to remain consistent with the contractual relationship between the amount added and the payment increase.

202. Illinois UCC §1-304 required good faith in BCU's performance and enforcement of duties governed by the UCC.

203. Plaintiff does not plead §1-304 as an independent tort.

204. Plaintiff states that BCU breached the written agreement and the accompanying duty of good-faith performance and enforcement by collecting or enforcing amounts inconsistent with the payment, insurance, and default terms actually governing L01.

205. Plaintiff suffered actual loss of use of funds and other recoverable economic injury to the extent BCU enforced amounts beyond those lawfully due.

# COUNT II

# ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

## UNFAIR SERVICING AND COLLECTION

206. Plaintiff incorporates paragraphs 1 through 188 only.

207. BCU engages in consumer lending and servicing.

208. BCU's system identifies $829.38 as Plaintiff's regular payment.

209. BCU's system identifies $1,658.76 as currently due.

210. BCU continued using those servicing figures in connection with Plaintiff's account.

211. Plaintiff repeatedly disputed the underlying amount.

212. The unfair conduct alleged is not merely BCU's refusal to produce records.

213. Plaintiff alleges that BCU enforced a materially increased payment, treated a two-installment deficiency as $1,658.76 rather than the $577.76 reflected by the historical payment figures, and continued the $829.38 servicing amount after CPI-related credits were posted.

214. Those acts affected Plaintiff's consumer accounts and deposit funds.

215. Plaintiff suffered pecuniary injury through loss of use of funds to the extent the enforced figures exceeded amounts properly due.

216. BCU is headquartered in Illinois.

217. On information and belief, the payment-setting, servicing-control, account-maintenance, and enforcement decisions challenged in this Count were made, administered, or controlled in substantial part through BCU personnel or systems located in Illinois.

218. That belief is based on the fact that the challenged figures originated within BCU's own servicing operations, rather than from either automobile dealer, together with BCU's Illinois headquarters and administration of the disputed accounts.

219. Plaintiff demands the relief authorized by 815 ILCS 505/10a if the pleaded Illinois nexus and statutory elements are established.

# COUNT III

# DECLARATORY JUDGMENT

## 28 U.S.C. §§2201–2202

220. Plaintiff incorporates paragraphs 1 through 188 only.
221. An actual controversy exists concerning the correct L01 regular payment.
222. An actual controversy exists concerning the contractual basis for $829.38.
223. An actual controversy exists concerning the $1,658.76 amount BCU states is currently due.
224. An actual controversy exists concerning whether installments that became due while $288.88 was the operative payment may later be valued at $829.38.
225. An actual controversy exists concerning the effect of the July 2026 CPI credits upon the L01 payment and balance.
226. An actual controversy exists concerning the amount actually delinquent when BCU applied Plaintiff's deposit funds.
227. An actual controversy exists concerning Plaintiff's assent to the CMSA version invoked by BCU.
228. An actual controversy exists concerning BCU's present claimed L01 lien-perfection status.
229. Plaintiff demands declarations determining:

a. the correct L01 regular payment;

b. the contractual basis, if any, for $829.38;

c. the correct present L01 amount due;

d. whether earlier installments were permissibly repriced using the later regular-payment figure;

e. the effect of the July 2026 CPI credits on the balance and payment calculation;

f. the amount lawfully past due in connection with the challenged account applications;

g. whether Plaintiff assented to the CMSA version BCU invokes; and

h. BCU's actual L01 perfection status.

230. Plaintiff further demands appropriate relief under 28 U.S.C. §2202 necessary to implement the Court's declarations.

# COUNT IV

# ELECTRONIC FUND TRANSFER ACT

## PLEADED IN THE ALTERNATIVE

231. Plaintiff incorporates paragraphs 1 through 188 only.
232. Plaintiff maintained consumer deposit accounts with BCU.
233. BCU previously operated an automatic-payment arrangement involving those accounts.
234. Plaintiff revoked that arrangement in writing on May 23, 2025.
235. BCU acknowledged and honored the revocation.
236. BCU's histories thereafter reflect recurring deposit-account debits or applications to L01 and L02.
237. Those entries bear differing labels.
238. Plaintiff does not allege that every challenged transaction necessarily constitutes a covered electronic fund transfer.
239. Regulation E excludes certain qualifying institution-initiated internal transfers.
240. BCU's transaction code, processing channel, and originator records determine whether each challenged transaction was an internal book transfer, ACH entry, or another transaction type.
241. Plaintiff did not execute a new recurring electronic-transfer authorization for $829.38 after revocation.
242. To the extent any challenged transaction was processed as a covered preauthorized electronic fund transfer, applicable EFTA and Regulation E requirements governed that transaction.
243. To the extent a covered varying transfer occurred without legally sufficient authorization or notice, Plaintiff demands the relief authorized by 15 U.S.C. §1693m.
244. This Count is expressly pleaded in the alternative to BCU's asserted characterization of the transactions as internal setoffs or account applications.

# COUNT V

# 810 ILCS 5/9-210 AND REMEDIES UNDER 810 ILCS 5/9-625

245. Plaintiff incorporates paragraphs 1 through 188 only.
246. Plaintiff was debtor with respect to the identified secured vehicle transactions.
247. The signed record described in paragraphs 162 through 166 identified L01 and L02.
248. It requested an accounting of the unpaid obligations and their components.
249. BCU received that signed record no later than November 11, 2025.
250. Fourteen days expired on November 25, 2025.
251. BCU did not send Plaintiff a signed record stating the aggregate unpaid secured obligation for each identified loan and identifying the components in reasonable detail.
252. Plaintiff has not subsequently received such a signed accounting.
253. BCU nevertheless continued enforcing the secured obligations.

254. Plaintiff states that the qualifying portion of the signed request required compliance with 810 ILCS 5/9-210.

255. Plaintiff suffered actual loss to the extent the absence of the required accounting impaired timely reconciliation while BCU continued enforcing disputed account amounts.

256. Plaintiff demands actual damages authorized by 810 ILCS 5/9-625 to the extent causation and loss are established.

257. Plaintiff further demands the remedy authorized by §9-625(f) if the evidence establishes failure without reasonable cause.

# XVII. ACCOUNTING, RECONCILIATION, AND RESTORATION AS RELIEF

258. Plaintiff does not assert an independent standalone equitable-accounting cause of action.

259. Accounting and reconciliation are demanded as remedies ancillary to the substantive claims and declaratory relief pleaded above.

260. The minimum records necessary to resolve the principal L01 controversy are transaction-specific.

261. They include the L01 payment-setting or re-amortization record that generated $829.38.

262. They include the L01 installment-aging history showing each due installment, its amount, amounts applied, and paid-through status.

263. They include the loan-level transaction history necessary to reconcile principal, interest, CPI, fees, credits, and account applications.

264. They include the July 2026 CPI credit calculation to the extent necessary to determine its effect on the payment calculation.

265. Plaintiff does not seek unrestricted access to BCU's enterprise-wide records.

266. Plaintiff demands correction of account records shown through reconciliation to be inaccurate.

267. Plaintiff demands restoration of identifiable funds proven to have been collected or applied beyond amounts lawfully due.

268. Plaintiff demands further relief necessary to effectuate any declaratory judgment entered by the Court.

# XVIII. DEMAND FOR RELIEF

**269. WHEREFORE, based upon the foregoing constitutional, statutory, contractual, federal, and equitable grounds, Plaintiff demands entry of judgment and the following relief:**

270. Judgment in Plaintiff's favor on each claim established.

271. A declaration establishing the correct L01 regular payment.

272. A declaration establishing the contractual basis, if any, for $829.38.

273. A declaration establishing the correct present amount due on L01.

274. A declaration determining whether installments that became due while $288.88 was the operative payment could lawfully be repriced at the later $829.38 figure.

275. A declaration determining the effect of the July 2026 CPI credits upon the L01 payment and balance.

276. A transaction-level reconciliation sufficient to determine the correct balance and amount due on L01 and L02.
277. Determination of the amount lawfully past due in connection with each challenged account application material to the claims.
278. Determination of whether Plaintiff assented to the CMSA version invoked by BCU.
279. Determination of BCU's actual L01 lien-perfection status.
280. Relief authorized by 810 ILCS 5/9-625 for proven Article 9 noncompliance.
281. Relief authorized by EFTA for each covered violation established.
282. Relief authorized by the Illinois Consumer Fraud and Deceptive Business Practices Act for each violation established.
283. Correction of balances, payment histories, amount-due fields, CPI adjustments, delinquency information, and related account records proven inaccurate.
284. Restoration of funds proven to have been collected, applied, or retained beyond amounts lawfully due.
285. Compensatory damages for proven contractual and economic injury.
286. Prejudgment and post-judgment interest where authorized.
287. Taxable costs.
288. Such additional legal and equitable relief as is necessary to effectuate the Court's determinations and restore the accounts to the condition required by the governing agreements and law.

# TESTIMONY UNDER YHWH AND PRESERVATION OF PRIOR FACTUAL TESTIMONY

I, **jerelle-thomas: smith**, give this Testimony under YHWH according to my conscience and personal knowledge. Every factual testimony previously placed into the record by me remains unretracted and preserved except to the extent that a particular factual statement is expressly corrected or clarified in this First Amended Complaint. Nothing in this First Amended Complaint is intended to constitute a voluntary withdrawal, abandonment, waiver, disavowal, novation, or surrender of factual testimony previously entered into the record. Prior pleadings, notices, testimony, exhibits, presentments, and other materials already filed remain part of the record and retain whatever evidentiary or procedural effect the Court determines governing law gives them. Where prior factual testimony has not been substantively answered by BCU, I continue to stand upon that testimony. I do not assert merely from silence that a disputed statement has thereby become a judicial admission or conclusively established fact. This First Amended Complaint is submitted **under protest and under the compulsion of the Court's amendment requirement and deadline, for the purpose of preventing dismissal of this action and obtaining adjudication upon the merits. The** act of amendment itself shall not be construed as my voluntary abandonment of prior factual testimony or as agreement with any characterization of that testimony previously advanced by BCU. I acknowledge that this First Amended Complaint functions as the operative pleading for purposes of the claims presently before the Court. That procedural effect does not mean that factual testimony previously entered into the record is erased, withdrawn, or admitted by me to have been false. Facts stated herein from my personal knowledge are true and correct to the best of my knowledge. Matters concerning BCU's internal records, systems, personnel, calculations, or other information not available to me are stated on information and belief where expressly indicated. This Testimony under YHWH expresses my conscience and the capacity in which I speak. It does not replace the certification effected by my

electronic signature pursuant to Federal Rule of Civil Procedure 11. **All rights and factual testimony expressly preserved without waiver except where expressly corrected herein.**

Dated: September 29, 2026

**s/ jerelle-thomas: smith**

**jerelle-thomas: smith**

2107 Faulkner Road NE #PPE517-2

Atlanta, Georgia [30326]

Telephone: 9373447946

Email: jts93713@gmail.com